

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 17, 1948

Hon. Geo. H. Sheppard          Opinion No. V-718
Comptroller of Public Accounts
Austin, Texas          Re: The applicability of the
         luxury excise tax on
         gross receipts from
         sales of radios, cosmet-
         ics, and playing cards to
         such sales by co-operative
         marketing associations.

Dear Mr. Sheppard:

You request an opinion upon the following question:

"It has come to the attention of this department
that certain stores under the Marketing Association
Act, known as Chapter 8, Title 93, Revised Civil
Statutes of Texas, 1925, are selling radios, cosmet-
ics, and playing cards. Are such stores required to
pay the gross receipts tax levied under Article 7047L,
R.C.S., 1925. I shall thank you to advise this depart-
ment in answer to this question."

We quote below the following pertinent provisions of
Title 93, Ch. 8, V.C.S., commonly known as "The Marketing As-
sociation Act." Article 5737 of this Act provides:

"In order to promote, foster and encourage the
intelligent and orderly production, cultivation and
care of citrus groves and marketing through coop-
eration and to eliminate speculation and waste; and
to make production and distribution of agricultural
products as direct as can be effectively done be-
tween the producer and consumer; and to stabilize
the production and marketing problems of agricul-
tural products, this law is passed."

Article 5738 provides in part:

"The term 'agricultural products' shall include
horticultural, viticultural, forestry, dairy, live stock,
poultry, bee, and any farm and ranch products; . . ."

Article 5740 provides in part:

"An Association may be organized to engage in any activity in connection with the production, cultivation and care of citrus groves or the marketing or selling of agricultural products and citrus fruits produced by and marketed for its members, or in the harvesting, preserving, drying, processing, canning, storing, handling, shipping or utilization thereof, or the manufacturing or marketing of the by-products thereof; or in connection with the manufacturing, selling, or supplying to its members of machinery, equipment or supplies; or in the financing of the above enumerated activities; or in any one or more of the activities specified herein. Provided, however, any such activities may extend to non-members and to the production, cultivation and care of lands owned or cultivated by them and their products limited by Article 5738 as heretofore amended."

Article 5742 provides in part:

"(a) To engage in any activity in connection with the production, cultivation and care of citrus groves and the marketing, selling, harvesting, preserving, drying, processing, canning, packing, storing, handling or utilization of any agricultural products produced or delivered to it by its members, or the production, manufacturing or marketing of the by-products thereof; or in connection with the purchase, hiring or use by its members of supplies, machinery or equipment; or in the financing of any such activities; or in any one or more of the activities specified in this Article.

" * * * "

Article 5764 provides:

"Each association organized hereunder shall pay to the Commissioner an annual license fee of ten dollars but shall be exempt from all franchise or license taxes. For filing articles of incorporation, an association organized hereunder shall pay ten dollars, and for filing an amendment thereto, two dollars and fifty cents."

It is observed that the foregoing Article 5737 is merely a legislative declaration of public policy; that Article 5742 defines

the powers of such associations; that Article 5740 defines the
purposes of such associations; and that Article 5764 provides
for a very limited exemption from taxation of such associations,
namely, franchise or license taxes.

It seems quite obvious to us that the sale of radios,
cosmetics, and playing cards is in no way remotely connected
with the powers and purposes for which such associations are
authorized. In brief, the sale of such articles is in no way rel-
evant to the powers and purposes, all closely allied to the pur-
suit of agriculture, as expressed in the foregoing Articles of
the statute. That farmer members of such associations might
be able to purchase these articles at the association's stores
upon more favorable terms than elsewhere, if such be the case,
adds nothing to the statutory and charter powers of such asso-
ciations. It was not the intention of the Legislature that these
associations, formed and carried on for the express purpose
of aiding the vital industry of agriculture and those engaged in
its pursuit, should enjoy an advantage, wholly foreign to the
benevolent purposes of this legislation.

The statute imposing a tax upon persons, partnerships,
associations, or corporations selling at retail new radios, cos-
metics, and playing cards as provided in Article 7047L, V.C.S.,
is as follows:

"Each person, partnership, association, or cor-
poration selling at retail new radios or new cosmet-
ics, shall make quarterly on the first days of January,
April, July, and October of each year, a report to the
Comptroller, under oath of the owner, manager, or if
a corporation, an officer thereof, showing the aggre-
gate gross receipts from the sale of any of the above-
named items for the quarter next preceding; and shall
at the same time pay to the Comptroller a luxury ex-
cise tax equal to two (2) per cent of said gross receipts
as shown by said report.

"Every person, partnership, association, or cor-
poration, selling at retail, playing cards shall make
quarterly report as provided above showing the total
number of packs or decks of such cards sold during
the preceding quarter, and shall at the same time pay
to the Comptroller a luxury excise tax of five (5) cents
per pack or deck of such playing cards so sold.

This is clearly a taxing statute, enacted solely for the
purpose of raising revenue, and is in no sense a regulatory meas-
ure. The Legislature has denominated it "a luxury excise tax."

The exemption from taxation accorded marketing associations applies only to franchise or license taxes. In view of the premise upon which we predicate our opinion, no useful purpose would be served to attempt to analyze what constitutes franchise, license, and excise taxes. The books are replete with decisions, by no means harmonious, pointing out the common characteristics and distinctions of these taxes. Neither the similarity nor difference between what the Legislature has here called an excise tax and a franchise or license tax is material if, in any event, liability for the tax exists because it falls upon those engaged in ultra vires transactions not covered by the exemption expressed in the statute. Conventional rules of statutory construction require a strict construction of statutes exempting persons and property from taxation. As to those transactions outside the scope of the purposes and powers of such associations, such as the sale of radios, cosmetics, and playing cards, there is no reason why the tax arising from such transactions should not apply in the same manner as to other dealers in general.

We therefore conclude that the tax imposed by Article 7047L, V.C.S., supra, should be paid by marketing associations selling radios, cosmetics, and playing cards—activities clearly beyond the charter powers conferred upon such associations as defined by statute; and Article 5764 of the Marketing Association Act quoted above affords no basis for exemption from the payment of such tax.

## SUMMARY

Marketing associations incorporated under the terms of what is commonly known as The Marketing Association Act, Ch. 8, Title 93, V.C.S., are not exempt from the tax imposed by Art. 7047L on radios, cosmetics, and playing cards, as the sale of such articles is not authorized under the terms of said Act; and the exemption from franchise and license taxes provided in Art. 5764 of said Act does not operate to relieve such association from the payment of the tax imposed by said Article.

Very truly yours

APPROVED:

ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL

By

L. P. Lollar
Assistant

LPL/JCP